**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBERT J DENORIS,

        Plaintiff,                 No   C 04-01659 VRW

        v                      ORDER

JO ANNE B BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

        Plaintiff Robert J Denoris appeals from the decision of
the Social Security Administration (SSA) denying plaintiff social
security disability benefits.  The court now considers cross-
motions for summary judgement.  Pl Mot (Doc #13); Def Mot (Doc
#14).  Because the court concludes that the ALJ's decision was
based upon legal error, the court GRANTS plaintiff's motion and
DENIES defendant's motion.

United States District Court

For the Northern District of California

I

A

Plaintiff was fifty-three years old on September 8, 2001, the date he alleges he became disabled.  Administrative Record, Doc # 8 (AR) 75.  Plaintiff is a high school graduate and has past relevant work experience as a lab technician and driver.  AR 76. Plaintiff reports that as a lab technician he used technical skill and knowledge, lifted weights as heavy as twenty pounds occasionally and ten pounds frequently.  Id.  Plaintiff has not worked since September 8, 2001.  AR 75.

On September 11, 2001, plaintiff underwent open heart bypass surgery and a mitral valve replacement.  AR 78, 242.  Since the date of his surgery, plaintiff has complained of severe depression, sleep deprivation, fatigue, shortness of breath and dizziness.  AR 100.  Plaintiff's medical history is primarily reported in the records of his three treating physicians:  Dr Kenneth Jiang, MD, Dr Martin Bress, MD, and Dr Niel Starksen, MD. One month after surgery, Dr Steven Schwartz, plaintiff's surgeon, wrote that plaintiff's heart had a regular rate and rhythm and good valve click.  AR 242.  After examining plaintiff on November 30, 2001, Dr Starksen wrote that the prosthetic mitral valve was functioning normally, and that plaintiff had no further symptoms. AR 346.  On August 7, 2002, Dr Starksen recorded that plaintiff's cardiac exam and stress echocardiogram were both normal, and that there was no evidence of ischemia.  AR 337.  Dr Starksen also noted that plaintiff was "possibly depressed."  AR 339.  Dr Bress, in a letter to Dr Jiang, stated that on March 26, 2003, plaintiff had completed thirty-six sessions of cardiac rehabilitation, that there

2

United States District Court

For the Northern District of California

1   was no evidence of inducible myocardial ischemia and that plaintiff

2   seemed motivated to make a lifestyle readjustment and planned to

3   join a gym.  AR 401.

4        Five months later, plaintiff's treating internal medicine

5   physician Dr Jiang, in a "cardiac medical source statement

6   questionnaire" dated August 12, 2003, opined that plaintiff was

7   incapable of even low stress jobs, was unable to sit or stand for

8   more than two hours, incapable of lifting more than twenty pounds,

9   and must avoid all exposure to extreme cold, heat, wetness,

10  humidity, noise, fumes, odors and hazards.  He noted, moreover,

11  that plaintiff was not a malingerer.  AR 495-98.

12       Plaintiff testified that he saw a psychologist for his

13  depression "for a little while."  AR 39.  Treating psychologist Dr

14  Wendy Sinclair-Brown, PhD, responded to a medical records request

15  for the period during which she treated plaintiff for depression

16  with the statement that "patient has no psychological problems that

17  prevent him from participating in ADL's or the workforce."  AR 369.

18  She provided no other records.  Id.

19       The record also contains reports from consulting

20  examinations ordered by the SSA in connection with plaintiff's

21  claim for benefits.  On November 2, 2002, psychiatrist Arthur

22  Floreza, MD, examined plaintiff and diagnosed him with a

23  "depressive disorder not otherwise specified," noting that "[h]e is

24  now currently spending a good deal of time isolating himself from

25  the public and so he would likewise have difficulty maintaining

26  regular attendance in a workplace."  AR 363-67.  Dr Floreza further

27  noted that plaintiff's depression was likely secondary to his

28  medical condition, and that due to "the chronicity of his medical

3

**United States District Court**
For the Northern District of California

1  condition [h]is prognosis is quite poor and [] he will [be]

2  unlikely [to] improve within the next 12 months."  AR 366.  Dr

3  Floreza concluded: "[h]e would be capable of completing simple and

4  repetitive tasks if his medical condition allows * * *[and] the

5  claimant would not have difficulty with complex tasks, again,

6  medical condition permitting."  AR 367.  On December 19, 2002,

7  psychiatrist Donald Walk, MD, completed a "Mental Residual

8  Functional Capacity Assessment," indicating that he found plaintiff

9  to be moderately limited in the areas of "the ability to complete a

10  normal workday and workweek without interruptions from

11  psychologically based symptoms and to perform at a consistent pace

12  without an unreasonable number and length of rest periods" and "the

13  ability to interact appropriately with the general public."  AR at

14  371.  Dr Walk concluded that plaintiff has a "depressive feature

15  [that] may reduce public interaction/persistence: [but] he can

16  adapt to competitive employment."  AR 372.

17

18                                   B

19       On June 24, 2002, plaintiff filed an application for

20  social security disability benefits.  AR 68.  In his initial

21  application, plaintiff stated that he was disabled due to his heart

22  condition; in his reconsideration disability report he stated that

23  his injury had worsened and he was suffering from severe

24  depression, fatigue, sleep deprivation, shortness of breath and

25  dizziness.  AR 75, 100.  Both initially and on reconsideration, the

26  SSA denied Plaintiff's request for benefits finding that plaintiff

27  was not disabled within the meaning of Title Two of the Social

28  Security Act (Act).  AR 55, 60.

                                    4

**United States District Court**
For the Northern District of California

1   \\

2           Plaintiff filed a timely request for an administrative

3   hearing, which took place on August 28, 2003.  At the hearing,

4   plaintiff testified that he was unable to work due to depression

5   and extreme fatigue resulting from his heart condition.  AR at 37,

6   39.  The vocational expert (VE) testified that a hypothetical

7   fifty-five-year-old individual with plaintiff's past relevant work

8   experience, level of education, and a residual functional capacity

9   (RFC) for light work would be able to work as a lab technician.  AR

10  43.  The VE also testified that if an individual was limited in the

11  manner described by Dr Jiang (unable to sit or stand for more than

12  four hours in a day or to be exposed to extreme environmental

13  conditions and needing to miss work more than four times a month)

14  that individual would not be able to work in any job which exists

15  in substantial numbers in the economy on a full-time basis.  AR 48.

16          On October 21, 2003, the administrative law judge (ALJ)

17  denied benefits based on the evidence presented at the hearing,

18  including the testimony of plaintiff and the VE, the reports of Drs

19  Starksen, Jiang, Bress, and Schwartz and other medical records.  AR

20  14-20.  The ALJ's decision set forth the five-step sequential

21  evaluation of disability required by 20 CFR § 404.1520, which

22  considered the following:  1) whether plaintiff was currently

23  engaged in substantial gainful activity; 2) whether plaintiff had a

24  severe impairment or combination of impairments; 3) if plaintiff

25  had a severe impairment, whether plaintiff had a condition that met

26  or equaled the conditions outlined in the Listing of Impairments,

27  20 CFR § 404, Pt 404, Subpt P, App 1; 4) if plaintiff did not have

28  such a condition, whether plaintiff was capable of performing his

5

United States District Court

For the Northern District of California

1  past work; and 5) if not, whether plaintiff had the RFC to do other

2  available work.

3      Applying this five-step sequential evaluation to

4  plaintiff, the ALJ found that:  1) plaintiff met the Act's insured

5  status requirements through December 2006 and had not been engaged

6  in substantial gainful activity during the relevant period; 2)

7  plaintiff had a history of coronary artery disease, status post

8  mitral valve replacement and double bypass, and mild depression; 3)

9  plaintiff did not have an impairment that met or equaled any listed

10  impairment; 4) "the claimant's subjective complaints of shortness

11  of breath, frequent fatigue, reduced stamina and stress were

12  uncorroborated by objective clinical signs and findings showing the

13  existence of medically determinable impairments that could

14  reasonably cause the degree of incapacity alleged"; 5) the

15  conclusions of the functional assessment form submitted by Dr Jiang

16  were not supported by the clinical signs and findings and were

17  contrary to the doctor's progress notes — "[f]or example, Dr Jiang

18  provided no explanation why an individual who was ready to join a

19  gym in March 2002 was incapable of more than very restricted

20  activities in August 2002"; 6) plaintiff retained the RFC for an

21  essentially full range of light work; 7) plaintiff's past relevant

22  work as a lab technician was skilled light work and his past

23  relevant work as a truck/van driver was medium semi-skilled work;

24  8) plaintiff retained the RFC for his previous employment as a lab

25  technician and also had the capacity to perform other jobs that

26  exist in significant numbers in the national economy; 9) the

27  claimant had not been under a disability as defined by the Act at

28  any time through the date of the decision.  AR 16, 19.

United States District Court
For the Northern District of California

1    The ALJ also reasoned that the fact that plaintiff had

2  undergone surgery and was taking medication "does not render him

3  disabled," and commented that "given the nature of the surgery his

4  functional nature may have improved."  AR 17.  Further, the ALJ

5  found that plaintiff's depressive disorder was not severe,

6  reasoning that "[t]he claimant's minimal treatment does not support

7  the presence of a severe mental impairment."  Id.  The ALJ

8  concluded that plaintiff was not disabled because he was capable of

9  performing his former light work as a lab technician, or,

10  alternatively, was able to perform other jobs per the VE's

11  testimony.  Id.

12    Plaintiff appealed the ALJ's decision to the SSA's

13  Appeals Council, which denied review.  On April 28, 2004, plaintiff

14  timely filed the instant action for judicial review of the ALJ's

15  decision.

16

17                              II

18    The court's jurisdiction is limited to reviewing the

19  administrative record to determine whether the ALJ's decision is

20  supported by substantial evidence and whether the SSA complied with

21  the requirements of the Constitution, the Act and its

22  administrative regulations in reaching the decision reviewed.  42

23  USC § 405(g).  A district court may overturn a decision to deny

24  benefits only if the decision is not supported by substantial

25  evidence or if the decision is based on legal error.  See Andrews v

26  Shalala, 53 F3d 1035, 1039 (9th Cir 1995); Magallanes v Bowen, 881

27  F2d 747, 750 (9th Cir 1989).  "Substantial evidence" is defined as

28  "more than a mere scintilla but less than a preponderance; it is

**United States District Court**
For the Northern District of California

1   such relevant evidence as a reasonable mind might accept as

2   adequate to support a conclusion."   Andrews, 53 F3d at 1039.

3

4                                    III

5                                     A

6          The Act provides that certain individuals who are "under

7   a disability" shall receive disability benefits.   42 USC §

8   423(a)(1)(D).   Disability is the "inability to engage in any

9   substantial gainful activity by reason of any medically

10  determinable physical or mental impairment which can be expected to

11  result in death or which has lasted or can be expected to last for

12  a continuous period of not less than 12 months."   42 USC §

13  423(d)(1)(A).   An individual will be found disabled if his

14  impairments are such "that he is not only unable to do his previous

15  work but cannot, considering his age, education, and work

16  experience engage in any other kind of substantial gainful work

17  which exists in the national economy * * *."   42 USC §

18  423(d)(2)(A).

19         To evaluate a claim of disability based on mental

20  impairment, the ALJ is required to employ a "special technique" at

21  the administrative hearing level to assist in 1) identifying the

22  need for additional evidence, 2) considering and evaluating the

23  functional consequences of the mental disorder on the claimant's

24  ability to work and 3) organizing and presenting the facts.   See 20

25  CFR § 404.1520a(b).   The regulation provides:

26              (b)(1) Under the special technique, we must
            first evaluate your pertinent symptoms, signs, and
27          laboratory findings to determine whether you have a
            medically determinable mental impairment(s).  []  If we
28          determine that you have a medically determinable mental

                                      8

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and  document our findings in accordance with paragraph (e) of this section. * * *

(c)(1) * * * We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment. * * *  (3)  We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  []  (4)  When we rate the degree of limitation in the first of three functional areas [] we will use the following five-point scale:  None, mild, moderate, marked, and extreme.  When we rate the degree of limitation in the fourth functional area (episodes of decompensation) we will use the following four-point scale:  None, one or two, three, four or more.  The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

(d) * * * After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s).  * * *

(e)  *Documenting application of the technique*.  * * *  At the administrative law judge hearing and Appeals Council levels[], <u>we will document application of the technique in the decision. * * *</u> (2) At the administrative law judge hearing and Appeals Council levels, the written decision issued by the administrative law judge or Appeals Council must incorporate the pertinent findings and conclusions based on the technique.  The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s).  <u>The decision must include a specific finding as to the degree of limitation in each of the functional areas</u> described in paragraph (c) of this section.

20 CFR § 404.1520a (emphasis added).

\\

\\

\\

9

United States District Court

For the Northern District of California

**B**

Plaintiff makes two major contentions in support of his motion.  First, he contends that the ALJ erred by applying the wrong legal standard when determining whether plaintiff has a mental impairment; specifically, plaintiff argues that the ALJ did not follow § 1520a's requirement that she enumerate her findings as to the degree of limitation in each of the four functional areas.  Pl Mot (Doc #13 at 4-5).  Second, plaintiff contends that the ALJ further erred by failing to incorporate all of plaintiff's alleged impairments into the questions the ALJ posed to the VE.  Id.  The court agrees with these contentions and finds on that basis that remand to the agency is warranted.

**1**

Here, the ALJ did not, at any point in her decision, "include a specific finding as to the degree of limitation in each of the four functional areas," nor did the ALJ "incorporate pertinent findings and conclusions" regarding plaintiff's alleged mental impairment as required by § 1520a.  Failure to do so requires this court to remand if the plaintiff has a "colorable claim of mental impairment."  See Guiterrez v Apfel, 199 F3d 1048, 1051 (9th Cir 2000).  Guiterrez construed an earlier version of § 1520a which required the ALJ to complete a Psychiatric Review Technique Form (PRTF).  An amended section 404.1520a became effective on September 20, 2000, and was therefore applicable to the ALJ's decision in this matter.  65 Fed Reg 507746-01.  Prior to its amendment, the regulation merely required the ALJ to complete a PRTF in order to comply with the statute.  Guiterrez, 199 F3d at 1049-1050.  The new

**United States District Court**

For the Northern District of California

1  regulation abolished the use of the PRTF in favor of requiring the

2  ALJ to set forth detailed findings and conclusions into his or her

3  decision.  See 20 CFR § 404.1520a(e)(2), quoted in part III A above.

4          A plaintiff's claim of mental impairment is "colorable" if

5  it is one which is not "wholly insubstantial, immaterial, or

6  frivolous."  <u>McBride Cotton & Cattle Corp v Veneman</u>, 290 F3d 973,

7  981 (9th Cir 2002) (quoting <u>Cassim v Bowen</u>, 824 F2d 791, 795 (9th

8  Cir 1987)).  Dr Floreza, a consulting physician, concluded that

9  plaintiff had a depressive disorder; Dr Starksen, one of plaintiff's

10  treating physicians, noted that plaintiff might suffer from

11  depression; and Dr Jiang, another treating physician, concluded that

12  plaintiff's physical symptoms and limitations caused depression.  AR

13  at 339, 396, 495.  This evidence gives rise to a colorable claim of

14  mental impairment.  Accordingly, the ALJ was required to follow the

15  procedures set forth in § 1520a.

16          The ALJ's noncompliance with § 1520a was not harmless

17  because it resulted in her failure adequately to consider

18  plaintiff's alleged mental impairment as a possible basis for his

19  claim of disability.  Specifically, the ALJ did not consider

20  whether, based on plaintiff's degree of limitation in each of the

21  four functional areas, plaintiff's mental impairment was severe at

22  step two, met or equaled a listed impairment at step three, impacted

23  his RFC at step four, or should have been included in her

24  hypothetical questions to the VE at step five.  See 20 CFR §

25  404.1520.

26  \\

27  \\

28  \\

**United States District Court**

For the Northern District of California

**2**

1

2          The ALJ's failure to apply the special technique for

3    mental impairments at 20 CFR § 404.1520a makes it impossible for the

4    court to determine whether substantial evidence supported

5    plaintiff's alleged mental impairment and whether the ALJ thus erred

6    in failing to include this alleged impairment in the hypothetical

7    questions posed to the VE.  "An ALJ must propound a hypothetical to

8    a VE that is based on medical assumptions supported by substantial

9    evidence in the record that reflects all the claimant's

10   limitations."  Osenbrock v Apfel, 240 F3d 1157, 1165 (9th Cir

11   2001)(citing Roberts v Shalala, 66 F3d 179, 184 (9th Cir 1985)).

12          On remand, the ALJ must evaluate plaintiff's mental

13   impairment using the procedure set out at § 1520a and must then

14   repeat the remaining steps of the sequential evaluation in light of

15   the properly-conducted mental impairment evaluation.  If the ALJ

16   determines that under the § 1520a analysis there is substantial

17   evidence of a mental impairment the ALJ must propound hypothetical

18   questions to the VE that reflect this limitation.  If the evidence

19   in the record is insufficient to determine the extent of plaintiff's

20   mental impairment under § 1520a, a new psychiatric evaluation may be

21   required.  See 20 CFR §§ 404.1519(a)(b)(4), 416.919a(b)(4); see also

22   Smolen v Charter, 80 F3d 1273, 1288 (9th Cir 1996) (holding that

23   "[i]n Social Security cases, the ALJ has a special duty to fully and

24   fairly develop the record and to assure that the claimant's

25   interests are considered").

26   \\

27   \\

28   \\

**12**

IV

For the reasons stated herein, this matter is remanded to the SSA for re-evaluation of the evidence consistent with this order.   The clerk shall enter judgment in accordance with this order and close the file and terminate all pending motions.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

13